**Thomas MULLER and La Paz Golf Villas, LLC, Appellants**

v.

**STEWART TITLE GUARANTY COMPANY and Joseph Alvarado, Appellees**

**NO. 14-16-00311-CV**

Court of Appeals of Texas, Houston (14th Dist.).

Opinion filed June 20, 2017

Jack G. Carnegie, James M. Kimbell, Zachary W. Thomas, Houston, TX, for Appellants.

John A. Koepke, Scott Masur McElhaney, Dallas, TX, Jennifer A. Bryant, Houston, TX, for Appellees.

Panel consists of Justices Christopher, Jamison, and Brown.

## OPINION

Marc W. Brown, Justice

This case arises out of a business venture involving property for a golf resort in La Paz, Mexico. Thomas Muller was one of three individuals who formed La Paz Golf Villas, LLC. La Paz and Desarrollos Punta La Paz S. de R.L. de C.V. entered into an escrow agreement with the international division of Stewart Title Guaranty Company (STGC) serving as escrow agent. Muller contributed funds for the escrow. After La Paz and Desarrollos cancelled the agreement, STGC released the remaining escrow funds to a La Paz account. In pertinent part, Muller brought claims against STGC and STGC's employee, Joseph Alvarado, for releasing the funds to the La Paz account instead of releasing the funds to him. The trial court granted STGC's and Alvarado's motions for traditional and no-evidence summary judgment; STGC's and Alvarado's motion to strike a fifth amended petition naming La Paz as an additional plaintiff; and STGC's and Alvarado's motion to strike La Paz's petition in intervention and to enter final judgment.

On appeal, Muller argues that: the trial court erred in granting summary judgment against him on his contract and fiduciary claims; the trial court abused its discretion by not continuing the summary-judgment hearing for Muller to conduct additional discovery; the trial court abused its discretion in striking the fifth amended petition; and the trial court abused its discretion in striking La Paz's petition in intervention. We affirm.

## I. BACKGROUND

Thomas Muller, James Limperis, and Frederick Stock formed La Paz Golf Villas, LLC, a Nevada company, in order to purchase development property for a golf resort in La Paz, Mexico, from Desarrollos

Punta La Paz S. de R.L. de C.V., a Mexican company. In August 2005, Desarrollos as Seller and La Paz as Purchaser entered into an escrow agreement. Under the agreement, Stewart Information International[1] served as escrow agent. The agreement stated that "[t]he parties mutually desire[d] to create an escrow account with [STGC] for the purpose of receiving, holding, administering and distributing the funds deposited as required herein." The agreement provided that $1,172,000 would be deposited in the agent's escrow account, with half of that amount being released immediately to Desarrollos for "advance real estate commissions." The agreement stated that "Seller and Purchaser are sometimes collectively identified as the 'Parties.'" The agreement also provided that "the Party(ies) making deposit(s)" could have the escrowed funds maintained in an interest-bearing money market account and that "[a]ll interest thereon shall be paid to Purchaser." Muller was not listed as a party to the escrow agreement. Limperis signed the agreement on behalf of La Paz. STGC sent La Paz a letter confirming the receipt of a deposit of $1,172,000 from Cummings & Lockwood and of $1,172,000 from Thomas R. Muller.

A few months later, there arose "a disagreement among the members of La Paz." Muller, Limperis, and Stock signed a settlement agreement in 2006 and another settlement agreement and mutual release in 2008.

In August 2011, Limperis sent STGC a letter as a "managing member" of La Paz. In that letter, La Paz requested a transfer of "interest only to date" from the escrow account to La Paz's "business bank account with Nevada State Bank." The letter provided wiring instructions for this account.

In October 2011, Muller (on behalf of himself and Stock) and Limperis signed the "La Paz Golf Villas, LLC, Agreement." This agreement stated that Limperis as a "managing member" of La Paz "has established our entity bank account and facilitated the withdrawal of interest only from our Escrow Account with" STGC, and that the interest-only amount of $183,531.77 was wired and received in La Paz's bank account in August 2011. This agreement outlined what would occur in the event the closing and acquisition of the property was unsuccessful. In pertinent part, the agreement provided that Limperis would release the escrow funds to the same La Paz bank account at Nevada State Bank.

On April 19, 2012, La Paz and Desarrollos sent STGC a signed notice of cancellation and requested that the remaining escrow funds be released to La Paz's bank account at Nevada State Bank. Limperis signed the notice for La Paz. The notice included wiring instructions with the same account number and routing number as in the August 2011 interest request.

On April 23, 2012, Alvarado sent Limperis an email regarding processing the cancellation. Alvarado stated:

> In order to return the funds back, we need to send the funds back to the account(s) from which they originated from. According to our records, we received funds from two different accounts:
>
> Cummings & Lockwood LLC (Bank of America)
>
> Thomas R. Muller (US Trust Company of NY)
>
> Can you please provide the wiring instructions for each account? If the account(s) are no longer valid, can you

please provide us with new wiring instructions?

Limperis replied to Alvarado's email:

Those accounts are no longer valid. I have given instructions to wire to our business account at Nevada State Bank as part of the cancellation requirement. If for any reason you cannot distribute funds to our business account at Nevada State Bank I would request that NO cancellation take place and the contracts and escrow remain in place. Please send confirmation that you understand the request and verify that if canceled the escrow funds will be distributed as directed to Nevada State Bank....

Thank you,

Jim Limperis

La Paz Golf Villas

STGC released just under $1.76 million to La Paz's account at Nevada State Bank.

In April 2014, Muller originally brought suit against Limperis, STGC, Alvarado, Does 1–10, and Roes Cos. 11–20. By April 2015, Muller had amended his petition four times. Muller removed Limperis as a defendant and named five additional defendants (Steve Gottardy, Mitch Creekmore, Tanya M. Harris, Farah A. Najjar, and Veronica Ramos) who allegedly were employees of STGC.[2] Against STGC, Muller brought claims for breach of contract, negligence, gross negligence, breach of fiduciary duty, negligent hiring, retention, and supervision, and vicarious liability. Against Alvarado, Muller brought claims for negligence, gross negligence, and breach of fiduciary duty. Muller requested attorney's fees pursuant to section 38.001 of the Texas Civil Practice and Remedies Code.

On September 29, 2015, STGC filed a traditional and no-evidence motion for summary judgment, and a notice of hearing.[3] Alvarado also filed a traditional and no-evidence motion for summary judgment, which incorporated STGC's summary-judgment motion and exhibits. Muller filed a response.[4]

STGC's and Alvarado's summary-judgment motions were set for hearing on Monday, December 14, 2015. On Sunday, December 13, Muller sent counsel for STGC and Alvarado a supplemental declaration in support of opposition to defendants' traditional and no-evidence motions for summary judgment, as well as a fifth amended petition naming La Paz as a plaintiff. The file stamps on these documents indicate that they were filed first thing on December 14, 2015. That same

**2.** These individuals are not parties to this appeal.

**3.** To its motion, STGC attached: excerpts from Muller's deposition, the escrow agreement, a November 2005 letter from Muller and Stock to John Fair of Fair Enterprises, LLC, the April 2012 notice of cancellation, an April 2012 file ledger of the escrow account, the August 2011 request for withdrawal of interest, and excerpts from Alvarado's deposition.

**4.** To his response, Muller attached: an affidavit by Muller, the escrow agreement, an affidavit by Fair, the STGC escrow account deposit receipt issued to La Paz, the November 2005 letter from Muller and Stock to Fair, the August 2011 request for withdrawal of interest, the signature card for the La Paz Nevada State Bank account, excerpts from Alvarado's deposition, an August 2011 account statement for the La Paz Nevada State Bank account, the October 2011 La Paz agreement, excerpts from Creekmore's and Gottardy's depositions, the April 2012 notice of cancellation, the April 2012 email exchange between Limperis and Alvarado, an August 2014 order granting in part Muller's motion for summary judgment against Limperis signed by the district court for Clark County, Nevada, the docket in a Nevada criminal action against Limperis, an initial expert report by Robert E. Philo, and an August 2011 email exchange between a principal at Cummings & Lockwood LLC and Gottardy.

day, the trial court held the summary-judgment hearing and signed orders granting STGC's and Alvarado's traditional and no-evidence motions.

In January 2016, STGC and Alvarado filed a verified motion to strike the fifth amended pleading and to show authority, and motion to enter final judgment. The trial court held a hearing on the motion on February 22, 2016. On February 25, 2016, La Paz as intervenor-plaintiff filed a petition in intervention. On March 2, 2016, the trial court signed an order of dismissal and interlocutory judgment. The next day, STGC and Alvarado filed a motion to strike the petition in intervention and to enter final judgment. The trial court held another hearing on March 14, 2016. That same day, the trial court signed its order striking intervention and rendering final judgment.

Muller and La Paz timely appealed.

## II. ANALYSIS

### A. The trial court properly granted summary judgment.

In an overarching first issue, Muller contends that the trial court erred in granting summary judgment and requests reversal and remand of his breach-of-contract and breach-of-fiduciary-duty claims. Second, Muller argues that there is a genuine issue of material fact regarding whether he is an intended, third-party beneficiary of the escrow agreement and therefore owed contractual and fiduciary duties. Third, Muller argues that there is a fact issue regarding breach of those contractual and fiduciary duties.[5] Finally, in his fourth issue, Muller asserts that the

trial court abused its discretion by refusing to continue the summary-judgment hearing to allow additional discovery.

#### 1. Trial court's refusal to continue the summary-judgment hearing

■ We address Muller's fourth issue first. Muller argues that the trial court abused its discretion in refusing to continue the summary-judgment hearing until Muller was able to conduct the discovery he needed to be able to adequately respond to STGC's and Alvarado's no-evidence motion for summary judgment.[6] Muller contends that he requested additional discovery in his summary-judgment opposition and attached his affidavit explaining the need for further discovery.

STGC and Alvarado respond that because Muller did not obtain a written ruling on his request to continue the summary-judgment hearing, he failed to preserve error on his argument that the trial court abused its discretion when it went ahead with the hearing. *See Lewis v. Marina Bay Trucks, Inc.*, No. 14-02-00053-CV, 2007 WL 900785, at *2 (Tex. App.—Houston [14th Dist.] Mar. 27, 2007, no pet.) (mem. op.) ("Because [movant] did not obtain a written ruling on his motion for continuance, he failed to preserve this complaint for appellate review."). The record on appeal does not include a notice of hearing or a signed order regarding the continuance. Muller, however, argues that the trial court implicitly denied his motion for continuance by proceeding with the summary-judgment hearing and granting summary judgment. *See* Tex. R. App. P.

---

5. Aside from issue four, Muller only provides arguments specifically challenging the summary judgment with regard to his contract and fiduciary claims.

6. In his opposition, Muller did not argue there had been inadequate time for discovery such that the trial court could not grant summary judgment under rule 166a(i). Muller instead requested additional time for discovery pursuant to rule 166a(g).

33.1(a)(2)(A). In any event, STGC and Alvarado contend that the trial court did not abuse its discretion in holding the hearing.

■ The trial court may order a continuance of a summary-judgment hearing "to permit affidavits to be obtained or depositions to be taken or discovery to be had" if it appears "from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition." Tex. R. Civ. P. 166a(g). A party contending that it has not had an adequate opportunity for discovery before a summary-judgment hearing either must file an affidavit explaining the need for further discovery or file a verified motion for continuance. *See Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 647 (Tex. 1996). "When reviewing a trial court's order denying a motion for continuance, we consider whether the trial court committed a clear abuse of discretion on a case-by-case basis." *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004) (citing *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 800 (Tex. 2002)). A trial court only abuses its discretion when it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law. *Id.* Courts consider the following nonexclusive factors when deciding whether a trial court abused its discretion in denying a motion for continuance seeking additional time to conduct discovery: the length of time the case has been on file; the materiality and purpose of the discovery sought; and whether the party seeking the continuance has exercised due diligence to obtain the discovery sought. *Id.*; *Duerr v. Brown*, 262 S.W.3d 63, 78 (Tex. App.—Houston [14th Dist.] 2008, no pet.).

In his opposition to STGC's and Alvarado's summary-judgment motions, Muller noted that discovery in his case was not set to close until April 18, 2016, with the trial set for May 16, 2016. In his affidavit, Muller stated that "[t]he necessary discovery remaining include[d]" what he alleged was a complete copy of the escrow agreement and the deposition of the Mexico closing coordinator for STGC, as well as third-party records and additional depositions.

■ The hearing on the motions for summary judgment was originally noticed and set for more than 21 days after the motions were filed, in compliance with rule 166a(c). The hearing took place two and a half months after the motions were filed. Generally, it is not an abuse of discretion to deny a motion for continuance where a party has received the 21-days' notice required by rule 166a(c). *Carter v. MacFadyen*, 93 S.W.3d 307, 310 (Tex. App.—Houston [14th Dist.] 2002, pet. denied); *Clemons v. State Farm Fire & Cas. Co.*, 879 S.W.2d 385, 394 (Tex. App.—Houston [14th Dist.] 1994, no writ); *see* Tex. R. Civ. P. 166a(c) ("Except on leave of court, with notice to opposing counsel, the motion and any supporting affidavits shall be filed and served at least twenty-one days before the time specified for hearing."). And the litigation had been pending for almost a year and a half at the time STGC and Alvarado filed their summary-judgment motions. *See Shanley v. First Horizon Home Loan Corp.*, No. 14-07-01023-CV, 2009 WL 4573582, at *5 (Tex. App.—Houston [14th Dist.] Dec. 8, 2009, no pet.) (mem. op.) (more than a year to conduct discovery did not suggest abuse of discretion); *Duerr*, 262 S.W.3d at 78 (same).

Moreover, Muller failed to provide any explanation for why any of the requested additional discovery was "necessary" or material. *See Doe v. Roman Catholic Archdiocese of Galveston–Houston ex rel. Dinardo*, 362 S.W.3d 803, 809, 812 (Tex.

App.—Houston [14th Dist.] 2012, no pet.) ("The affidavit must explain why the continuance is necessary; conclusory allegations are insufficient."); *Shanley*, 2009 WL 4573582, at *5; *Duerr*, 262 S.W.3d at 78 (movant must state what requested discovery "would demonstrate or how this information would assist [movant] or the court"); *Carter*, 93 S.W.3d at 310 ("[W]ithout any specifics, the affidavit gave no basis for the trial court to weigh the materiality of the requested discovery or the length of continuance that would be needed.").

■ In addition, Muller did not point to any place in the record showing his diligent efforts to obtain, nor did he aver that he filed a motion to compel, any of this discovery. *See Bottenstein v. Univ. of Tex. Med. Branch at Galveston*, No. 14-07-00747-CV, 2009 WL 3003256, at *6 (Tex. App.—Houston [14th Dist.] Feb. 10, 2009, no pet.) (mem. op.); *O'Kane v. Coleman*, No. 14-06-00657-CV, 2008 WL 2579832, at *7 (Tex. App.—Houston [14th Dist.] Jul. 1, 2008) (mem. op.); *see also State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988) ("[T]he failure of a litigant to diligently utilize the rules of civil procedure for discovery purposes will not authorize the granting of a continuance.").

Even assuming without deciding that Muller preserved error as to his request for continuance in his summary-judgment response and attached affidavit, we conclude that the trial court did not clearly abuse its discretion in refusing Muller's request.[7] We overrule Muller's fourth issue.

### 2. Standard of review

■ We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). In reviewing either a no-evidence or traditional summary judgment motion, we must take as true all evidence favorable to the nonmovant and draw every reasonable inference and resolve all doubts in favor of the nonmovant. *M.D. Anderson Hosp. & Tumor Inst. v. Willrich*, 28 S.W.3d 22, 23–24 (Tex. 2000) (per curiam); *Mendoza v. Fiesta Mart, Inc.*, 276 S.W.3d 653, 655 (Tex. App.—Houston [14th Dist.] 2008, pet. denied).

■ A no-evidence motion for summary judgment is essentially a motion for a pretrial directed verdict. *See* Tex. R. Civ. P. 166a(i); *Timpte Indus., Inc. v. Gish*, 286 S.W.3d 306, 310 (Tex. 2009). After an adequate time for discovery, a party without the burden of proof may, without presenting evidence, seek summary judgment on

---

7. Muller also relies on a supplemental declaration, arguing that in "significant detail" his supplemental declaration "outlined what discovery was needed, why it was relevant, and what efforts he took to obtain it." The supplemental declaration was filed as a stand-alone document on December 14, 2015, the same day the trial court held the summary-judgment hearing and signed its orders granting summary judgment. However, "[s]howing that a motion was filed with the court clerk does not constitute proof that the motion was brought to the trial court's attention or presented to the trial court with a request for a ruling." *See Zahorik v. Metro. Life Ins. Co.*, No. 14-14-00564-CV, 2015 WL 4051972, at *6–7 (Tex. App.—Houston [14th Dist.] July 2, 2015, no pet.) (mem. op.); *Murphree v. Cooper*, No. 14-11-00416-CV, 2012 WL 2312706, at *1 (Tex. App.—Houston [14th Dist.] June 19, 2012, no pet.) (mem. op.); *Approximately $1,013.00 v. State*, No. 14-10-01255-CV, 2011 WL 5998318, at *2 (Tex. App.—Houston [14th Dist.] Dec. 1, 2011, no pet.) (mem. op.). Muller did not raise the supplemental declaration (or his request for a continuance at all) during the summary-judgment hearing. Under these circumstances, we conclude that Muller failed to preserve this particular argument for review. *See* Tex. R. App. P. 33.1(a). In any event, applying the *239 Joint Venture* factors, we would not find that the trial court clearly abused its discretion in rejecting any request for continuance based on Muller's supplemental declaration.

the ground that there is no evidence to support one or more essential elements of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The nonmovant is required to present evidence raising a genuine issue of material fact supporting each element contested in the motion. *Id.*; *Timpte Indus.*, 286 S.W.3d at 310.

■ The party moving for a traditional summary judgment has the burden to show that no material fact issue exists and that it is entitled to summary judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Willrich*, 28 S.W.3d at 23. To be entitled to traditional summary judgment, a defendant must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Am. Tobacco Co., Inc. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). Evidence is conclusive only if reasonable people could not differ in their conclusions. *City of Keller v. Wilson*, 168 S.W.3d 802, 816 (Tex. 2005). Once the defendant produces sufficient evidence to establish the right to summary judgment, the burden shifts to the plaintiff to come forward with competent controverting evidence raising a genuine issue of material fact. *Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995).

■ Where, as here, a summary judgment fails to specify the grounds upon which the trial court relied for its ruling, we must affirm the judgment if any of the grounds advanced is meritorious. *See Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex. 1989); *Ross v. Arkwright Mut. Ins. Co.*, 892 S.W.2d 119, 127 (Tex. App.—Houston [14th Dist.] 1994, no writ). Where, as here, the movant files a hybrid summary-judgment motion, we usually address no-evidence grounds first, but need not do so if we conclude we must affirm the ruling on traditional grounds. *See McCoy v. FemPartners, Inc.*, 484 S.W.3d 201, 205 (Tex. App.—Houston [14th Dist.] 2015, no pet.).

### 3. Muller's contract claims

■ In their summary-judgment motions, with regard to Muller's claims for breach of the escrow agreement, STGC and Alvarado argued that there was no evidence Muller was a party to or a third-party beneficiary of that agreement. STGC and Alvarado also argued that Muller's contract claim failed as a matter of law because the four corners of the escrow agreement showed Muller was not a party or a third-party beneficiary. STGC and Alvarado asserted that Muller's reliance on extrinsic evidence was irrelevant and incompetent.[8]

Muller argues that there is a genuine issue of material fact regarding whether Muller is an intended, third-party beneficiary of the escrow agreement. Muller focuses on evidence extrinsic to the escrow agreement—namely, that Muller contributed escrowed funds and the parties to the escrow agreement knew that. John Fair, a principal of Desarrollos, stated that he understood Muller contributed escrowed funds and that the escrow agreement was executed directly for the benefit of, and was intended to secure a benefit to, all parties involved in the La Paz project, including Muller. Muller asserts that STGC knew that funds in the escrow account originated from Muller's bank account. In addition, Muller argues that the escrow agreement indicated "an intent to benefit Muller because it contemplates the party depositing funds into the escrow account being a party to the agreement."

---

**8.** STGC and Alvarado further argued that even if Muller was a third-party beneficiary, he could not show that STGC breached the escrow agreement.

Muller relies on this court's decision in *First Bank v. DTSG, Ltd.*, 472 S.W.3d 1, 18–20 (Tex. App.—Houston [14th Dist.] 2015), *rev'd*, *First Bank v. Brumitt*, No. 15-0844, 519 S.W.3d 95, 2017 WL 1968830 (Tex. May 12, 2017). Muller argues that *First Bank* explained that "the so-called 'four corners' rule relied upon by [STGC and Alvarado] is no longer the law in Texas."

In *First Bank*, this court concluded the trial court did not err in submitting a third-party-beneficiary issue to the jury over an objection that such analysis should be limited to the four corners of the commitment letters at issue and that construction of the unambiguous letters was a matter of law for the court. *Id.* at 19–20. In doing so, we relied upon the decisions of the Supreme Court of Texas in *Sharyland Water Supply Corp. v. City of Alton*, 354 S.W.3d 407 (Tex. 2011), and *Basic Capital Management v. Dynex Commercial*, 348 S.W.3d 894 (Tex. 2011), and held that "under current law extrinsic evidence may be considered in determining whether a person is a third-party beneficiary of the contract, even if the contract is a written, unambiguous contract." *First Bank*, 472 S.W.3d at 19.

Recently, the Supreme Court of Texas reversed our decision in *First Bank*. The *Brumitt* Court began its analysis by providing "well-established principles." 519 S.W.3d at 102, 2017 WL 1968830, at *3. That is, generally, "the benefits and burdens of a contract belong solely to the contracting parties, and 'no person can sue upon a contract except he be a party to or in privity with it.'" *Id.* (quoting *House v. Hous. Waterworks Co.*, 88 Tex. 233, 31 S.W. 179, 179 (1895)). A person who is not party to the contract may sue for damages caused by a breach if the person qualifies as a third-party beneficiary. *Id.* Third-party-beneficiary status "depends solely on the contracting parties' intent." *Id.* (citing *Stine v. Stewart*, 80 S.W.3d 586, 589 (Tex. 2002)). The person seeking to establish such status "must demonstrate that the contracting parties 'intended to secure a benefit to that third party' and 'entered into the contract directly for the third party's benefit.'" *Id.* (quoting *Stine*, 80 S.W.3d at 589).

"It is not enough that the third party would benefit—whether directly or indirectly—from the parties' performance, or that the parties knew that the third party would benefit." *Id.* (citing, amongst others, *Sharyland*, 354 S.W.3d at 421). That the third party intended or expected to benefit also does not matter. *Id.*

Instead, "[t]o determine whether the contracting parties intended to directly benefit a third party and entered into the contract for that purpose, courts must look solely to the contract's language, construed as a whole." *Id.* at 102, *4. "The contract must include 'a clear and unequivocal expression of the contracting parties' intent to directly benefit a third party,' and any implied intent to create a third-party beneficiary is insufficient." *Id.* (quoting *Tawes v. Barnes*, 340 S.W.3d 419, 425 (Tex. 2011)). Courts must presume that the parties contracted solely for themselves, and only a clear expression of the intent to create a third-party beneficiary can overcome such presumption. *Id.* (citing *Corpus Christi Bank & Tr. v. Smith*, 525 S.W.2d 501, 503–04 (Tex. 1975)). Where there is any doubt about the parties' intent in the contract's language, those doubts must be resolved *against* conferring third-party-beneficiary status. *Id.* (citing *Tawes*, 340 S.W.3d at 425). The "controlling factor" is the absence of any sufficiently clear and unequivocal language demonstrating the necessary intent. *Id.* (citing *Tawes*, 340 S.W.3d at 428).

The *Brumitt* Court then considered the plain language of the commitment letters and determined that the letters were unambiguous and did not clearly express the parties' intent to make the plaintiff a third-party beneficiary. *Id.* at 104–05, *5. Moreover, the Court explained that the parties' intent to create a third-party beneficiary is a contractual term like any other, and where unambiguous, presents a question of law for the court. *Id.* at 105–06, *6 (citing *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)).

Finally, with regard to extrinsic evidence, the *Brumitt* Court concluded that in *First Bank* we erred in our reading of *Basic Capital* and *Sharyland* and that those decisions did not change the law or announce a new rule. 519 S.W.3d at 108–09, 2017 WL 1968830 at *9. Instead:

> These types of references to the "circumstances" surrounding a contract recognize that evidence of the circumstances may assist courts in construing the language the parties used, but they do not authorize courts to rely on such evidence to add to or alter the terms contained within the agreement itself. When parties "have a valid, integrated written agreement," the parol-evidence rule "precludes enforcement of prior or contemporaneous agreements." *Hous. Expl. Co. v. Wellington Underwriting Agencies, Ltd.*, 352 S.W.3d 462, 469 (Tex. 2011). As a result, "extrinsic evidence cannot alter the meaning of an unambiguous contract." *Dynegy Midstream Servs., Ltd. P'ship v. Apache Corp.*, 294 S.W.3d 164, 170 (Tex. 2009). Courts may consider the "context in which an agreement is made" when determining whether the contract is am-

biguous, but the parties may not rely on extrinsic evidence "to create an ambiguity or to give the contract a meaning different from that which its language imports." *Anglo–Dutch Petroleum [Int'l, Inc. v. Greenberg Peden, P.C.]*, 352 S.W.3d [445,] 451 [ (Tex. 2011) ] (internal quotation marks omitted) (quoting *David J. Sacks[, P.C. v. Haden]*, 266 S.W.3d [447,] 450–51 [ (Tex. 2008) (per curiam) ] ).

*Brumitt*, 519 S.W.3d at 109–10, 2017 WL 1968830, at *10. In other words, courts may consider contextual extrinsic evidence only as an aid in construction of the contract's language, but not "to make the language say what it does not unambiguously say." *Id.* Therefore, "[b]ecause the [letters'] language is unambiguous, the court—not a jury—should have determined the parties' intent as a matter of law, and it could not do so by relying on extrinsic evidence to create an intent that the contract itself does not express." *Id.*

Muller asserts that whether the parties to the escrow agreement intended to confer a benefit on him as a third party is a question of fact.[9] We disagree. Instead, applying *Brumitt*, we determine as a matter of law whether the escrow agreement is unambiguous and whether it "clearly, wholly, and unequivocally" expresses the parties' mutual intent to make Muller a third-party beneficiary. *See id.* at 104–05, 112–13, *5, 12.

Muller does not contend that the escrow agreement is ambiguous. STGC and Alvarado assert that the agreement is unambiguous, and we agree. The escrow agreement plainly stated that it was made and entered into by and between Desarrollos as Seller and La Paz as Purchaser. The

---

9. The Texas cases cited by Muller are not persuasive because they did not involve intent of the parties in the context of a construing a written contract. *See State Farm Fire & Cas.* *Co. v. S.S.*, 858 S.W.2d 374, 378 (Tex. 1993); *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986); *Logan v. Mullis*, 686 S.W.2d 605, 608 (Tex. 1985).

agreement expressly identified Seller and Purchaser collectively as the Parties. The agreement stated that the Parties mutually named STGC as the escrow agent to provide escrow services and to create an escrow account for the purpose of receiving, holding, administering, and distributing the funds deposited. Only the Parties by written agreement could modify, amend, or alter the agreement. The escrow agreement, however, never mentions Muller. *See id.* at 104–05, *5. Nor does the agreement refer in any way to the underlying source of any deposited funds for Purchaser. *See id.*

Presumably, Muller, as underlying source of the escrowed funds and a manager and member of La Paz, would benefit from the real estate transaction and therefore from STGC's agreement to serve as escrow agent for the transaction. Presumably, Desarrollos as Seller, La Paz as Purchaser, and STGC as escrow agent knew that Muller would so benefit. "But such presumptions cannot support [Muller's] claim to be a third-party beneficiary." *See id.* This is because "[c]ontracts often benefit third parties, and the contracting parties are often aware that their performance under the contract will benefit third parties." *Id.*

We also reject Muller's argument that the agreement "contemplates the party depositing funds into the escrow account being a party to the agreement." This is not what the agreement contemplates. Rather, it provides: "If the Party(ies) making deposit(s) wish(es) to have the Escrowed Funds maintained in an interest bearing money market account, such party(ies) shall provide a completed Form W-9 (or Form W-8, if applicable) to Escrow Agent." The next sentence of the agreement provides additional context that the

"Party" at issue intended to benefit from any payment of interest was Purchaser La Paz: "All interest thereon shall be paid to Purchaser." The agreement does not provide that Muller or the individual or entity which was the underlying source of any deposited funds for Purchaser would receive the interest—or expressly receive any other benefit.

Nothing contained in the escrow agreement clearly, fully, wholly, and unequivocally expresses the parties' intent to contract directly for Muller's benefit and therefore to confer on Muller the right to be a claimant in the event of a breach. *See id.* at 104–05, 112–13, *5, 12. Relying on the escrow agreement's plain and unambiguous language, we conclude that Muller is not a party or a third-party beneficiary. *See id.* at 104–05, *5. Even considering the extrinsic facts and circumstances that Muller raises to support his reading of the escrow agreement, they are of limited, if any, relevance and "cannot be used to show that the parties probably meant, or could have meant, something other than what their agreement stated." *See id.* at 110, *10 (quoting *Anglo–Dutch Petroleum*, 352 S.W.3d at 451). Despite any belief by a contracting party or Muller about benefits to be conferred on him by the escrow agreement, the "controlling factor" is the absence of any sufficiently clear and unequivocal language demonstrating the necessary intent within the agreement itself. *See id.* at 103, *4.

Because Muller is not a party or third-party beneficiary of the escrow agreement as a matter of law, STGC owed him no contractual duty, and the trial court properly granted summary judgment on Muller's contract claims based on such agreement.[10]

---

**10.** Because we conclude that the trial court properly could have granted summary judgment as to Muller's contract claims based on lack of duty, we need not address Muller's

*4. Muller's fiduciary claims.*

An escrow agent for a real estate transaction owes a fiduciary duty to both parties to an escrow agreement: the buyers and the sellers of the property. *Gary E. Patterson & Assocs., P.C. v. Holub*, 264 S.W.3d 180, 203 (Tex. App.—Houston [1st Dist.] 2008, pet. denied); *Trahan v. Lone Star Title Co. of El Paso, Inc.*, 247 S.W.3d 269, 287 (Tex. App.—El Paso 2007, pet. denied); *Zimmerman v. First Am. Title Ins. Co.*, 790 S.W.2d 690, 695 (Tex. App.—Tyler 1990, writ denied) ("An escrow agent is in a fiduciary relationship with the contracting parties."); *see also Garcia v. Bank of Am. Corp.*, 375 S.W.3d 322, 333 (Tex. App.—Houston [14th Dist.] 2012, no pet.) ("Cases in which courts have described escrow agents as owing fiduciary duties to both parties to an escrow agreement have considered the issue in the context of closings on real property wherein the agent has a fiduciary duty to both sides in the transaction.").[11] However, an escrow agent does not owe a duty "to the non-party creditor of a party to the escrow agreement." *See Gary E. Patterson*, 264 S.W.3d at 203–04 (citing *Rove v. First Am. Title Ins. Co.*, No. 05-96-01783-CV, 1998 WL 696880, at *4 (Tex. App.—Dallas Oct. 8, 1998, no pet.) (not designated for publication) (no fiduciary duty owed to nonparty to escrow agreement that provided earnest money to party pursuant to ancillary agreement)).

In their summary-judgment motions, STGC and Alvarado argued there was no evidence that they owed Muller any fiduciary duties because there was no evidence of an agreement among Muller, another party, and STGC for which STGC would serve as an escrow agent. STGC and Alvarado also argued that Muller was not a party to the agreement between Desarrollos and La Paz for the underlying real estate transaction for which STGC served as escrow agent. According to STGC and Alvarado, even if Muller effectively was a creditor of the party La Paz, an escrow agent does not owe any fiduciary duty to a non-party creditor of a party to the escrow agreement. *See Gary E. Patterson*, 264 S.W.3d at 203–04.[12]

Muller essentially reurges his position that he is a third-party beneficiary of the escrow agreement. Therefore, Muller asserts that he was owed fiduciary duties by STGC and Alvarado "as though he were a named party to the agreement."

We have determined as a matter of law that Muller is not a party to the escrow agreement. We also already have determined that Muller is not a third-party beneficiary as a matter of law. Nevertheless, Muller cites *Zimmerman* for the proposition that an escrow agent owes fiduciary duties to a non-party to the escrow agreement. *Zimmerman*, however, is distinguishable.

In *Zimmerman*, the appellate court reversed a directed take-nothing verdict entered against a real estate agent plaintiff on his contract and fiduciary claims against the title company escrow agent. The plaintiff in *Zimmerman* was a signatory to the purchase contract and the con-

---

third issue regarding raising a fact issue on breach. *See* Tex. R. App. P. 47.1

**11.** The duties of the escrow agent are limited and defined by the escrow agreement itself. *Garcia*, 375 S.W.3d at 333; *Trahan*, 247 S.W.3d at 287. The escrow agent has these fiduciary obligations: (1) the duty of loyalty; (2) the duty to make a full disclosure; and (3) the duty to exercise a high degree of care to conserve the money and pay it only to those persons entitled to receive it. *Zimmerman*, 790 S.W.2d at 695.

**12.** STGC and Alvarado further argued that even if a fiduciary duty existed, Muller could not show that STGC and Alvarado breached such a duty.

tract expressly provided that the plaintiff was to receive a particular lot sold to the buyer free and clear of liens in lieu of an ordinary commission. *Cf.* 790 S.W.2d at 694–95.[13] In contrast, Muller does not possess "enforceable legal rights" under the escrow agreement. *Cf. id.* at 694.

We conclude that as a matter of law STGC and Alvarado owed Muller no fiduciary duties based on any status as a third-party beneficiary of the escrow agreement. Therefore, the trial court properly granted summary judgment on Muller's fiduciary claims.[14] We overrule Muller's first through third issues.

## B. The trial court did not abuse its discretion by striking La Paz's attempts to intervene.

According to Muller and La Paz, La Paz had a right to intervene because of its justiciable interest in the pending suit. In their fifth and sixth issues, Muller and La Paz argue that the trial court abused its discretion by striking the fifth amended petition. They contend that the fifth amended petition was actually La Paz's first petition in intervention, was timely filed under rule 60 because the trial court had not entered final judgment, and La Paz had authority under both Nevada and Texas law to intervene. In their seventh and eighth issues, Muller and La Paz again contend that the trial court abused its discretion by striking La Paz's intervention essentially because it was timely filed.

"Any party may intervene by filing a pleading, subject to being stricken out by the court for sufficient cause on the motion of any party." Tex. R. Civ. P. 60. We review a trial court's striking of a petition in intervention for abuse of discretion. *See Guaranty Fed. Savs. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990) (op. on reh'g). The test for abuse of discretion is whether the trial court acted without reference to any guiding rules and principles. *See Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985). Simply because a trial court may decide a matter within its discretion in a different manner than an appellate court in a similar circumstance does not demonstrate abuse of discretion. *Id.* at 242. "Because a trial court has 'broad' discretion in determining whether to strike an intervention, that discretion presumably includes consideration of all issues related to whether intervention was proper in the case under the circumstances, i.e., any sufficient cause." *Allen Parker Co. v. Trustmark Nat. Bank (Allen Parker II)*, No. 14-12-00766-CV, 2013 WL 2457113, at *6 (Tex. App.—Houston [14th Dist.] June 6, 2013, pet. denied) (mem. op.) (citing Tex. R. Civ. P. 60).

A trial court may strike an intervention where (1) the intervention will complicate the case by excessive multiplication of the issues or (2) the intervention is not necessary to effectively protect the

---

**13.** Muller also cites *Gonzales v. American Title Co. of Houston*, 104 S.W.3d 588, 598 (Tex. App.—Houston [1st Dist.] 2003, pet. denied), for the proposition that an escrow agent must act with utmost good faith and avoid self-dealing to place its interests in conflict with its obligations to beneficiaries. However, unlike here, *Gonzales* involved circumstances where the parties agreed that the title company escrow agent defendant was in a fiduciary relationship with the plaintiff borrowers. *See*

*id.* And, in any event, Muller has not alleged that STGC and Alvarado acted in bad faith or engaged in any self-dealing.

**14.** Because we conclude that the trial court properly could have granted summary judgment as to Muller's fiduciary claims based on lack of duty, we need not address Muller's third issue regarding raising a fact issue on breach. *See* Tex. R. App. P. 47.1.

intervenor's interests. *See Guaranty Fed.*, 793 S.W.2d at 657. Significant delay in filing a petition in intervention also may qualify as "sufficient cause" to strike an intervention:

> It thus appears that Intervenors waited about three years and nine months after suit was filed by Armstrong before attempting to intervene in the case, and their petition was filed after Tideland's motion for summary judgment was filed and set for hearing originally on December 4, 1969. Under these conditions it appears that we need not reach the question of limitations and the order dismissing the petition in intervention may be affirmed on the basis that it was not timely filed as is contended by appellee's third reply point.

*Armstrong v. Tidelands Life Ins. Co.*, 466 S.W.2d 407, 412 (Tex. Civ. App.—Corpus Christi 1971, no writ). Our court also has held that the trial court acts within its broad discretion in striking a late-filed petition in intervention which would have interjected new issues and caused delay. *See Allen Parker II*, 2013 WL 2457113, at *6 (considering "last-minute nature" of attempted intervention in finding no abuse of discretion by trial court in striking intervention); *Roberson v. Roberson*, 420 S.W.2d 495, 499 (Tex. Civ. App.—Houston [14th Dist.] 1967, writ ref'd n.r.e.) (petition in intervention filed two years after divorce proceeding instituted which sought to determine status of certain property properly stricken).

STGC and Alvarado moved to strike both the fifth amended petition and La Paz's petition in intervention as improper based on untimeliness, prejudice, and unreasonable delay. STGC and Alvarado asserted that La Paz's intervention was "filed too late." STGC and Alvarado argued that they litigated the case against Muller for over a year, conducted discovery, filed and set their summary-judgment motions that effectively set the case for trial, and showed they were entitled to summary judgment and dismissal.

Here, La Paz waited until just before the summary-judgment hearing to attempt to intervene, almost 20 months after Muller filed suit, and two and a half months after STGC and Alvarado filed and set for hearing their summary-judgment motions. La Paz made its second attempt to intervene on February 25, 2016, three days after the hearing on STGC's and Alvarado's motion to strike the fifth amended petition, more than 22 months after Muller filed suit, and more than two months after the trial court heard and granted summary judgment in favor of STGC and Alvarado.

■ Muller and La Paz rely on *Texas Mutual Insurance Co. v. Ledbetter*, 251 S.W.3d 31 (Tex. 2008), the first *Allen Parker Co. v. Trustmark National Bank (Allen Parker I)*, No. 14-11-00027-CV, 2012 WL 8017011 (Tex. App.—Houston [14th Dist.] Feb. 16, 2012, pet. denied) (mem. op.), and *Gore v. Peck*, 191 S.W.3d 927 (Tex. App.—Dallas 2006, no pet.), for the proposition that because La Paz's intervention occurred before final judgment, the intervention was timely. However, "untimely" with respect to a petition in intervention can refer to a petition filed so late that it would delay the proceeding or unjustifiably complicate it. *See Allen Parker II*, 2013 WL 2457113, at *6; *Armstrong*, 466 S.W.2d at 412; *Roberson*, 420 S.W.2d at 499. *Ledbetter, Allen Parker I*, and *Gore* do not hold to the contrary. *Ledbetter* involved circumstances where a worker's compensation carrier properly intervened to assert its subrogation claim after settlement of the worker's tort suit; moreover, the plaintiffs had conceded timeliness. 251 S.W.3d at 36–37. In *Allen Parker I*, we held that it was an abuse of discretion to refuse a petition in intervention filed be-

fore final judgment "[i]n the absence of a motion to strike." 2012 WL 8017011, at *3; *see Allen Parker II*, 2013 WL 2457113, at *1 n.1. In *Gore*, the appellate court lacked jurisdiction over an intervention filed after final judgment. 191 S.W.3d at 928.

Under these circumstances, and considering the trial court's broad discretion to consider all the issues related to whether the intervention was proper, Muller and La Paz have not shown that the trial court acted without any reference to guiding rules or principles. We overrule Muller and La Paz's fifth through eighth issues.

### III. Conclusion

Having overruled Muller's challenges to the granting of summary judgment and Muller's and La Paz's challenges to the striking of the fifth amended petition and the petition in intervention, we affirm the trial court's final judgment.

See also 422 S.W.3d 909 and 476 S.W.3d 557.