**Affirmed and Memorandum Opinion filed June 3, 2021.**



**In The**

# Fourteenth Court of Appeals

### NO. 14-19-01002-CV

**VIRGINIA A. KINNEY, Appellant**

**V.**

**CHICAGO BRIDGE & IRON (CB&I), LLC, Appellee**

**On Appeal from the 127th District Court
Harris County, Texas
Trial Court Cause No. 2017-65953**

## MEMORANDUM OPINION

Virginia A. Kinney challenges the trial court's grant of summary judgment in favor of Chicago Bridge & Iron ("CB&I") on her employment-related claims for gender, age, and national origin discrimination under the Texas Commission on Human Rights Act ("TCHRA"). *See* Tex. Lab. Code §§ 21.001-.556.

To demonstrate a prima facie case of employment discrimination based on alleged disparate treatment arising from her termination, Kinney had to proffer evidence that she was treated less favorably than similarly situated persons. Because

she proffered no evidence on this essential element of her prima facie case, we affirm the trial court's grant of no-evidence summary judgment in favor of CB&I.

## BACKGROUND

This appeal arises from the termination of Kinney's employment as a Buyer II for CB&I, a provider of construction-related services. CB&I has multiple levels within the Buyer position ranging in order of experience from Buyer I, an entry-level position through Principal Buyer I, the most senior level with significant experience. Kinney worked as a Buyer II for just over one year before being terminated by her supervisor.

The parties sharply dispute the reason for Kinney's termination.

According to Kinney she was qualified for the position of Buyer II but within a year of employment was relocated to the Markham Facilities Project. Despite Kinney's experience as a "lead buyer," she alleged she was required to work under a "regular Buyer." Approximately one month later Kinney met with her supervisor Jack Brown and was given an Interim Performance Evaluation ("IPE"). Kinney alleged that no other Buyers received an IPE but received normal evaluations. Following the IPE, Kinney was relocated to the Oxy Project where, according to Kinney, she was given limited purchase orders and low-value orders in an apparent attempt to "make her fail at her job, based on her sex, national origin, and age." On May 22, 2015, just over one month later, Kinney was terminated.

CB&I contends it terminated Kinney's employment due to her "ongoing performance deficiencies." According to CB&I, Kinney was treated similarly to all other Buyers in the company. Kinney was assigned specific projects that lasted for a limited duration. Most Buyers worked with a variety of managers during their employment.

Kinney's first assignment, after orientation and training, was at the BG LNG Front-End Engineering Design ("FEED") project. According to CB&I a FEED project occurs before CB&I signs a contract with a client and focuses on proposed technical requirements and costs. At that time Kinney reported to Senior Project Manager Garfield Sicard and Project Procurement Manager Klaus Ahrens. Approximately six months later, Kinney was assigned to the Mozambique FEED project where she continued to report to Sicard and Ahrens.

Approximately one month later Kinney was moved to the Bahrain FEED project where she and about 30 other Buyers were supervised by Procurement Manager Jack Brown. Marian "Lee" Fatheree supervised Kinney's day-to-day duties on the Bahrain project in addition to supervising another Buyer on the project, Cynethia Bell. Fatheree reported to Brown that Kinney failed to meet expectations, specifically that Kinney was unable to handle more than one task at a time, did not timely complete tasks, and struggled to understand basic concepts despite several training sessions. Fatheree subsequently took a medical leave of absence, and Bell assumed day-to-day supervision of Kinney.

On April 15, 2015, Brown completed Kinney's IPE, which listed several performance areas in which Kinney was asked to improve within 30 days. At the same time Brown completed IPEs on two other Buyers, a 56-year-old Caucasian man, and a 31-year-old African-American man. Brown advised all three employees of specific areas in which their performance did not meet expectations and notified them of the need for significant improvement within 30 days.

After receiving the IPE, Kinney was assigned to a new project managed by Frank Robinson. Kinney was provided several days of training on a Buyer Interface system used by CB&I buyers. Kinney was also given less complex orders to facilitate her transition to the project. Despite the extra training and less complex

3

orders, Kinney completed only one purchase order during the first month on the project while other Buyers on the team each completed approximately ten orders during the same month. On May 22, 2015, Brown terminated Kinney's employment "based on the ongoing performance deficiencies observed by her supervisors[.]" Around the same time Brown terminated the 56-year-old Caucasian man and 31-year-old African-American man who also received IPEs based on similar ongoing performance deficiencies.

Kinney sued CB&I alleging that CB&I violated the TCHRA in connection with her termination because CB&I discriminated against her on the basis of age, gender, and national origin, which she identified as Hispanic. Kinney alleged she was subjected to different terms and conditions of employment because of her sex, national origin, and age.

CB&I filed a motion for traditional and no-evidence summary judgment in which it alleged, inter alia, that Kinney had produced no evidence of a prima facie case of age, gender, or national origin discrimination because she had no evidence that she was treated less favorably than similarly situated employees who were not in the protected class.

The trial court signed a single order in which it granted both the traditional and no-evidence summary judgment motions without specifying particular grounds. Kinney timely appealed.

## ANALYSIS

Kinney contends the trial court erred in (1) failing to grant her motion for continuance due to CB&I's failure to respond to discovery requests; (2) considering certain summary-judgment proof because it included hearsay; and (3) granting no-evidence summary judgment because the IPE was used as a pretext to mask age

4

discrimination.

## I.    Kinney failed to preserve her first two issues for review.

### A.    Motion for Continuance

In response to CB&I's motion for summary judgment, Kinney sought a continuance of the summary judgment proceeding asserting that CB&I had not provided certain discovery. In Kinney's first issue she challenges the trial court's failure to grant her motion for continuance due to CB&I's alleged failure to comply with discovery. The record, however, does not reflect that the trial court ruled on Kinney's motion.

Rule 166a(g) of the Texas Rules of Civil Procedure permits a party opposing a motion for summary judgment to request a continuance of the hearing on the motion so that discovery may be completed. *Hood v. Hanna & Hanna Inc.*, No. 14-18-00557-CV, 2020 WL 1951636, at *2 (Tex. App.—Houston [14th Dist.] Apr. 23, 2020, no pet.) (mem. op.). A party contending that she has not had an adequate opportunity for discovery before a summary-judgment hearing must either file an affidavit explaining the need for further discovery or file a verified motion for continuance. *Muller v. Stewart Title Guaranty Co.*, 525 S.W.3d 859, 866 (Tex. App.—Houston [14th Dist.] 2017, no pet.). Merely filing a motion for continuance is not enough, standing alone, to preserve error. *See id*. at 867, n.7 (stating in a summary judgment case, that showing a motion was filed with the court clerk does not constitute proof that the motion was brought to the trial court's attention or presented to the trial court with a request for a ruling). A party must also obtain a ruling, or object to the trial court's failure to rule on that party's motion for continuance to preserve that issue for appellate review. *See id*.

While Kinney filed a motion for continuance as part of her response to the

motion for summary judgment, she did not set the motion for a hearing or otherwise bring the motion to the trial court's attention. There is also no indication in the record that Kinney objected to the trial court's failure to rule on her motion for continuance. We conclude Kinney failed to preserve error and overrule her first issue on appeal. *See Hood*, 2020 WL 1951636, at \*2 (concluding that party who failed to obtain a ruling from the trial court or object to the failure to rule on a motion for continuance waived error).

## B.     Objections to Summary-Judgment Evidence

In Kinney's response she also objected to certain summary-judgment proof attached to CB&I's motion for summary judgment. Specifically, Kinney objected that Brown's affidavit contained hearsay. The record, however, does not reflect a ruling on Kinney's hearsay objection.

A party must present summary-judgment evidence in a form that would be admissible at trial. *See In re Estate of Guerrero*, 465 S.W.3d 693, 706 (Tex. App.– Houston [14th Dist.] 2015, pet. denied). Because an inadmissible-hearsay complaint raises a defect in form rather than a defect in substance, a party must present this complaint to the trial court and obtain an explicit or implicit ruling. *Okpere v. Nat'l Oilwell Varco, L.P.*, 524 S.W.3d 818, 824 (Tex. App.—Houston [14th Dist.] 2017, pet. denied). Kinney therefore waived her hearsay objections by failing to obtain a ruling from the trial court. *See Pico v. Capriccio Italian Rest., Inc.*, 209 S.W.3d 902, 909 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Moreover, the trial court did not implicitly rule on the hearsay objection by granting the motion for summary judgment. *See Seim v. Allstate Tex. Lloyds*, 551 S.W.3d 161, 166 (Tex. 2018) (for purposes of issue preservation for appeal, a trial court's ruling on an objection to summary-judgment evidence is not implicit in its ruling on the motion for summary judgment).

We further note that because we resolve this appeal based on grounds asserted in CB&I's no-evidence summary judgment motion, even if Kinney had preserved this issue, we would not need to address Kinney's appellate contention that portions of the evidence submitted with CB&I's traditional summary judgment motion were inadmissible. *Remaley v. TA Operating LLC*, 561 S.W.3d 675, 678, n.1 (Tex. App.—Houston [14th Dist.] 2018, pet. denied) (court need not address movant's evidence when affirming grant of no-evidence summary judgment). We therefore overrule Kinney's second issue.

## II. The trial court properly granted summary judgment because Kinney proffered no evidence on an essential element of her prima facie case.

### A. Standard of review

We review summary judgments de novo. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 156 (Tex. 2004). When, as here, the trial court grants the judgment without specifying the grounds, we will affirm if any of the grounds presented are meritorious. *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

CB&I moved for summary judgment on both traditional and no-evidence grounds. We resolve this case based on no-evidence grounds; therefore, we discuss only the standard of review pertinent to a no-evidence summary judgment motion. We take as true all evidence favorable to the nonmovant, indulging every reasonable inference and resolving any doubts in the nonmovant's favor. *See King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003).

The movant seeking a no-evidence summary judgment represents that there is no evidence of one or more of the essential elements of the claims for which the non-movant bears the burden of proof at trial. Tex. R. Civ. P. 166a(i). We sustain a no-evidence summary judgment when (a) there is a complete absence of evidence of a

vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. *King Ranch, Inc.*, 118 S.W.3d at 751. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)). More than a scintilla of evidence exists when reasonable and fair-minded people could differ in their conclusions based on the evidence. *Id*.

We apply this standard of review to the parties' contentions regarding Kinney's claims that CB&I violated the TCHRA by discriminating against her on the basis of gender, age, and national origin when CB&I fired her.

### B.     Governing legal framework

An employer commits an unlawful employment practice under the TCHRA "if because of race, color, disability, religion, sex, national origin, or age the employer . . . discharges an individual . . . or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment[.]" Tex. Lab. Code § 21.051(1). Kinney contends that CB&I violated section 21.051(1) when it terminated her employment, and that her age, gender, and national origin were impermissible motivating factors in her termination. *See* Tex. Lab. Code § 21.125.

The TCHRA "provide[s] for the execution of the policies of Title VII of the Civil Rights Act of 1964 and its subsequent amendments." Tex. Lab. Code § 21.001(1). Texas state courts look to analogous federal statutes and cases interpreting them to guide application of the TCHRA. *See, e.g., Quantum Chem. Corp. v. Toennies*, 47 S.W.3d 473, 476 (Tex. 2001); *see also Exxon Mobil Corp. v.*

*Rincones*, 520 S.W.3d 572, 583 (Tex. 2017).

"Texas courts follow the settled approach of the U.S. Supreme Court in recognizing two alternative methods of proof in discriminatory treatment cases." *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 634 (Tex. 2012). "The first method . . . involves proving discriminatory intent via direct evidence of what the defendant did and said." *Id*. "However, the High Court recognized that motives are often more covert than overt, making direct evidence of forbidden animus hard to come by." *Id*. "So to make matters easier for discrimination plaintiffs, the Court created the burden-shifting mechanism of *McDonnell Douglas*." *Id*. (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973)).

"Under this framework, the plaintiff is entitled to a presumption of discrimination if she meets the 'minimal' initial burden of establishing a prima facie case of discrimination." *Id*. (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981), and *Wal–Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) (per curiam)). "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case 'is not onerous.'" *Id*.

"The *McDonnell Douglas* presumption is 'merely an evidence-producing mechanism that can aid the plaintiff in his ultimate task of proving illegal discrimination by a preponderance of the evidence.'" *Id*. "The prima facie case 'raises an inference of discrimination only because we presume these acts, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors.'" *Id*. (citing *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577 (1978)). Ultimately, if the employee produces evidence of a prima facie case and the defendant fails to "articulate some legitimate, nondiscriminatory reason" for the employment decision, that presumption will be sufficient to support a finding of

liability. *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).

## C.    Application of framework

For a claim of disparate treatment under the TCHRA, which is Kinney's theory, she can meet her prima facie burden by showing that she: (1) is a member of a protected class, (2) was qualified for her position, (3) was subject to an adverse employment action, and (4) was treated less favorably than similarly situated persons not in the protected class. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000); *Navy v. Coll. of the Mainland*, 407 S.W.3d 893, 899 (Tex. App.—Houston [14th Dist.] 2013, no pet.). When challenged to do so in a motion for summary judgment, a plaintiff must establish a prima facie case and present evidence raising a fact issue of pretext in order to survive such a motion. *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 438–39 (Tex. App.—Houston [14th Dist.] 2002, pet. denied).

There is no dispute that Kinney, as a 62-year-old female who identifies as Hispanic, is a member of a protected class and suffered an adverse employment decision when CB&I terminated her employment. CB&I moved for summary judgment on the ground that there is no evidence Kinney was treated less favorably than similarly situated persons not in the protected class. Thus, we address the fourth *McDonnell Douglas* element, whether Kinney produced evidence that she was treated less favorably than younger, non-Hispanic men.

The Supreme Court of Texas has concluded that "[e]mployees are similarly situated if their circumstances are comparable in all material respects, including similar standards, supervisors, and conduct." *Ysleta Indep. Sch. Dist. v. Monarrez*, 177 S.W.3d 915, 917 (Tex. 2005) (per curiam); *see also Rincones*, 520 S.W.3d at 584; *Tooker v. Alief Indep. Sch. Dist.*, 522 S.W.3d 545, 557 (Tex. App.—Houston [14th Dist.] 2017, no pet.). The United States Court of Appeals for the Fifth Circuit

10

has articulated a similar standard, saying that employees are similarly situated if their circumstances are "nearly identical." *See Perez v. Tex. Dep't of Criminal Justice, Institutional Div.*, 395 F.3d 206, 213 (5th Cir. 2004). To establish that employees are "comparable in all material respects," a plaintiff must show "that there were no differentiating or mitigating circumstances as would distinguish the employer's treatment of them." *Donaldson v. Texas Dep't of Aging & Disability Servs.*, 495 S.W.3d 421, 435 (Tex. App.—Houston [1st Dist.] 2016, pet. denied) (internal quotation omitted).

In response to CB&I's motion for summary judgment Kinney alleged she presented evidence that she was treated less favorably than a similarly situated person not in a protected class. Specifically, Kinney asserted that she was treated less favorably than Cynethia Bell, a non-Hispanic female, who is over 40, but younger than Kinney. Kinney identifies an attachment to her response as evidence that Bell was a similarly-situated employee who was more favorably treated. That document, apparently generated by CB&I, states that Fatheree often asked another "female Buyer assigned to this project (African American, over age 40) to complete Ms. Kinney's assignments." Kinney produced no evidence that Bell was the over-40 African-American female, that Bell performed at the same level as Kinney, or that Bell received more favorable treatment.

The only other evidence produced by Kinney in response to the motion for summary judgment included several documents reflecting Kinney's salary, a document noting that Kinney received a "Spot Bonus" of $1,000 for "outstanding performance in supporting the Mozambique and British Gas FEEDs," an email from Brown stating how many cubicles had been assigned to his team, an email sent to Kinney from Fatheree explaining the work week schedule for the project, Kinney's IPE, Kinney's allegation of discrimination filed with the Texas Workforce

11

Commission, a document describing the requirements for CB&I's Performance Management Program, and Kinney's determination of unemployment benefits. None of the above-recited evidence establishes that Kinney was less favorably treated than Bell.

In her brief Kinney asserts that she received less compensation than two similarly situated male counterparts on the Mozambique Project. Kinney, however, did not present evidence about those male employees to the trial court. The record lacks evidence that Kinney was treated less favorably than similarly situated employees; therefore, Kinney did not present evidence of a prima facie case of discrimination. The trial court properly granted CB&I's motion for no-evidence summary judgment. We overrule Kinney's third issue.

## CONCLUSION

Having overruled Kinney's issues on appeal we affirm the trial court's judgment.


/s/  Jerry Zimmerer
    Justice


Panel consists of Justices Wise, Zimmerer, and Poissant.

12