# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00292-CV

**Barton Food Mart, Inc., Appellant**

**v.**

**Nejla Botrie, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
NO. D-1-GN-15-005615, HONORABLE TIM SULAK, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Barton Food Mart, Inc. (BFM) appeals from a judgment in favor of its landlord, Nejla Botrie. Botrie sought declaratory relief that BFM had defaulted on its lease and an award of attorney's fees. The trial court rendered judgment declaring that BFM had defaulted twelve times and awarded Botrie $131,146.93 in attorney's fees. For the reasons that follow, we will affirm.

## BACKGROUND

Botrie owns a small shopping center located in Austin. In 2000, Shaukat Prasla and Imtiyaz Dhuka took over the lease of a tenant that was operating a convenience store and reopened as Barton Food Mart.[1] In 2010, Botrie executed a new lease with Prasla's corporation KLM

---

[1] To avoid confusion, we refer to appellant as "BFM" and the physical store as "Barton Food Mart."

Enterprises, Inc., d/b/a/ Barton Food Mart (the Lease). Prasla signed the Lease as President of KLM and executed a separate document personally guaranteeing KLM's obligation to pay rent.

Later the same year, KLM assigned the lease to BFM, a newly created corporation. Prasla executed the assignment for both entities. Per the Lease and the assignment, Prasla's guarantee remained in effect. Four years later, BFM and Botrie executed an amendment extending the lease term to 2020.

**Barley Bean**

Botrie, a resident of Canada, employs Consolidated Management Solutions (CMS) to manage the shopping center. CMS employees send Botrie monthly reports on the status of the property. On March 3, 2015, Prasla emailed Botrie and two CMS employees, Carla Neel and Diana Chastain, that BFM was:

> planning to introduce "BARLEY BEAN" at Barton Food Mart. This brand will include Coffee, Sandwich, and Pizza etc. I have attached lay out as to how this Deli counter will look like. We would like to put a small sign outside next to our regular sign. I have attached the logo [of the] sign.

Chastain replied:

> I have discussed these changes with Nejla. The interior changes/addition of product sound like they will be a good complement to your current model.
>
> Unfortunately, we are unable to permit additional exterior signage at the property. The storefront facade is to be reserved for tenant specific (as named in the Lease) illuminated signage per the sign criteria. We

2

can, however, permit an <u>interior</u> sign to be installed in the window as long as it is a clean, professional appearing sign.

Botrie and Neel subsequently testified that they believed BFM would offer pre-prepared Barley Bean food products and add a single Barley Bean sign to the interior of a window. In July of 2015, CMS employees discovered that BFM added five signs advertising Barely Bean and two exterior speakers. BFM modified the interior to add food preparation areas, wall-mounted menus, a new sink and lighting fixtures, a television, and customer seating, and hired two new employees to prepare food to order.

**Lawsuit**

Article 23.1 of the Lease provides that certain circumstances "shall be deemed to be events of default" and entitle Botrie to possession of the premises. Under article 23.1(b), BFM defaults by violating a provision of the Lease (other than those applying to payment of rent) and failing to cure the violation within fifteen days of receiving notice. By letter dated August 10, 2015, Botrie notified BFM that it had violated nine provisions of the Lease and gave BFM fifteen days to cure.

On December 11, 2015, Botrie filed suit seeking declaratory relief that BFM had violated the Lease by offering made-to-order food and making the modifications to the store described above, and that each violation amounted to a default under article 23.1(b). BFM answered and asserted promissory estoppel as a defense.

In December of 2016, BFM deposed Chastain by agreement. BFM's counsel asked Chastain about some of her communications with Botrie. Botrie's counsel objected that all of

3

Chastain's communications with Botrie from February 2015 were "work product and therefore not discoverable" and instructed Chastain not to answer. *See generally* Tex. R. Civ. P. 192.5. BFM's counsel then adjourned the deposition.

In January of 2017, BFM filed an amended pleading asserting counterclaims for tortious interference with present contracts, civil conspiracy, and suit for accounting, and requested a declaration that it had not defaulted under article 23.1(b).

Botrie filed a traditional and no-evidence summary judgment motion on all of BFM's counterclaims the following month. In the same motion, Botrie moved to dismiss BFM's counterclaims for tortious interference and civil conspiracy under the Texas Citizens' Participation Act (TCPA). *See generally* Tex. Civ. Prac. & Rem. Code §§ 27.001-.011. The trial court granted the motion to dismiss on March 10, 2017. By separate order signed the same day, the trial court granted summary judgment on the same counterclaims but denied relief as to the other counterclaims.

Fifteen days after the trial court's ruling, BFM filed a motion to continue the trial setting to resume Chastain's deposition and a separate motion to compel. The trial court denied the motion for a continuance but did not rule on the motion to compel.

During this process both BFM and Botrie amended their pleadings to add additional claims. On March 2, 2017—thirty-two days before trial—BFM filed an amended pleading adding a counterclaim for breach of contract. Botrie filed a motion to strike and special exceptions. The trial court denied the motion to strike but did not rule on the special exceptions.

4

On March 6, 2017, Botrie filed an amended pleading requesting declaratory relief stating that BFM had defaulted under article 23.1(a) by paying rent late. Article 23.1(a) provides that BFM defaults if it pays rent late and does not correct the problem within five days of receiving notice and that any subsequent failure in the following twelve-month period becomes a default with no additional notice required. Botrie also sought an award of attorney's fees under section 37.009 of the Uniform Declaratory Judgment Act (UDJA) or article 23.7 of the Lease.

On March 21, 2017, BFM filed another pleading asserting a counterclaim entitled "fraud in a real estate transaction." Botrie filed a separate motion to strike the fraud claim as untimely. The trial court granted Botrie's motion at the pretrial conference on April 3, 2017.[2]

**Trial**

The parties agreed that the jury would decide whether BFM had defaulted under article 23.1(b) of the Lease. After receiving the jury's answers, the trial court would then decide whether BFM had defaulted under article 23.1(a) and whether to award Botrie her attorney's fees.

BFM argued to the jury that the defaults Botrie alleged were excused by its reliance on Botrie's agreement—conveyed by Chastain in the email reproduced above—to allow BFM to introduce Barley Bean and related signage into the store.

The trial court submitted two questions to the jury. The first asked the jury to individually decide whether seven of the alleged defaults had occurred. The second asked the jury

---

[2] BFM added CMS as a third-party defendant in January 2017 and asserted civil conspiracy and fraud causes of action against it as crossclaims. Botrie's counsel appeared for CMS and filed an answer but CMS did not explicitly join Botrie's pretrial motions. In their briefs to us, the parties treat the motions as joint. Regardless, the judgment is final because it expressly states that it disposes of all claims and parties. *See Lehmann v. Har-Con Corp.*, 39 S.W.3d 191, 200 (Tex. 2001).

5

to decide whether any of the defaults that it found under the first question were excused by BFM's reliance on Botrie's promise. The jury found that five of the seven defaults occurred but that three of the above were excused.

The trial court then heard argument concerning whether BFM defaulted by paying rent late and on attorney's fees. Botrie offered, and the trial court admitted, evidence reflecting that CMS notified BFM by letter on January 13, 2016 that its rent was late and that BFM did not pay the rent within the five-day period. The trial court admitted other communications from CMS reflecting that it did not receive rental payments in subsequent months.

The trial court signed a final judgment declaring that BFM had defaulted five times under article 23.1(b), of which three were excused, and had defaulted ten times under article 23.1(a) by paying rent late. The judgment awarded Botrie $131,146.93 in attorney's fees under article 23.7 of the Lease and, "to the extent necessary," under section 37.009 of the UDJA.

BFM filed a timely motion for new trial. Seventy-one days after the trial court signed the final judgment, BFM filed a motion to abate for defect in parties, a motion to dismiss for want of jurisdiction, and a motion for judgment notwithstanding the verdict. The trial court allowed the motion for new trial to be overruled by operation of law and never ruled on the remaining motions.

BFM appeals from the final judgment in fifteen issues.

**BRIEFING WAIVER**

We first address Botrie's assertions that BFM waived its issues through inadequate briefing. An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record." Tex. R. App. P. 38.1(i). Botrie argues

that BFM never cites to the reporter's record and frequently omits the standard of review. Botrie is correct about the deficiencies of BFM's brief, but the Texas Supreme Court instructs us to be "hesitant to find waiver and, when possible, construe briefing reasonably, yet liberally, so that the right to appellate review is not lost by waiver." *Anderson v. Durant*, 550 S.W.3d 605, 617 (Tex. 2018). We will address the merits of BFM's issues to the extent possible. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) ("[A]ppellate courts should reach the merits of an appeal whenever reasonably possible.").

## PRETRIAL RULINGS

BFM challenges various pretrial and evidentiary rulings in its eighth through twelfth issues.[3]

### Tortious Interference and Civil Conspiracy

BFM argues in its eleventh and twelfth issues that the trial court erred in granting Botrie's no-evidence motion for summary judgment in part and its motion to dismiss under the TCPA.[4]

---

[3] We address BFM's issues in the chronological order in which they arose during the case.

[4] Botrie argues that BFM waived its challenges to the trial court's orders because BFM only stated the date of the final judgment in its notice of appeal. *See* Tex. R. App. P. 25.1(d)(2) (providing that notice of appeal must "state the date of the judgment or order appealed from"). More information was not necessary because the trial court's interlocutory orders merged into the final judgment. *See Roccaforte v. Jefferson Cty.*, 341 S.W.3d 919, 924 & n. 10 (Tex. 2011). By specifying that it was appealing from the final judgment, BFM preserved its challenge to the interlocutory rulings. *See Perry v. Cohen*, 272 S.W.3d 585, 587 (Tex. 2008) (per curiam) (holding that appellants "were not required to state in their notice of appeal that they were challenging the interlocutory order granting special exceptions" but only "the date of the judgment or order appealed from—in this instance the order dismissing their suit").

In its eleventh issue, BFM argues that it did not have adequate time to conduct discovery before the trial court granted summary judgment. *See* Tex. R. Civ. P. 166a(i) (authorizing party to move for no-evidence summary judgment only "[a]fter adequate time for discovery"). We review a trial court's determination that there has been adequate time for discovery for an abuse of discretion. *Haven Chapel United Methodist Church v. Leebron*, 496 S.W.3d 893, 901 (Tex. App.—Houston [14th Dist.] 2016, no pet.). A trial court abuses its discretion if it acts without reference to guiding rules or principles. *Bennett v. Grant*, 525 S.W.3d 642, 653 (Tex. 2017), *cert. denied*, 138 S. Ct. 1264 (2018).

"[T]he rules do not mandate a minimum period of time a case must be pending before a motion may be filed, as long as there was adequate time for discovery." *Restaurant Teams Int'l, Inc. v. MG Sec. Corp.*, 95 S.W.3d 336, 340 (Tex. App.—Dallas 2002, no pet.). When analyzing whether an abuse of discretion occurred we may consider the nature of the case, the materiality and purpose of the discovery sought, the length of time the case and motion for summary judgment have been on file, the amount of the discovery that has already taken place, and whether the party requesting more time has exercised due diligence to obtain the discovery sought. *Madison v. Williamson*, 241 S.W.3d 145, 155 (Tex. App.—Houston [1st Dist.] 2007, pet. denied); *see Akhter v. Schlitterbahn Beach Resort Mgmt., LLC*, No. 03-13-00117-CV, 2013 WL 4516130, at *3 (Tex. App.—Austin Aug. 22, 2013, no pet.) (mem. op.).

Botrie contends that the length of time the case was on file strongly indicates that there had been adequate time for discovery. This case had been on file for thirteen months when Botrie filed her motion for summary judgment in February of 2017. The trial court granted the

motion in part the next month. *See, e.g.*, *Buholtz v. Field*, No. 03-17-00232-CV, 2018 WL 700058, at *4 (Tex. App.—Austin Jan. 31, 2018, pet. denied) (mem. op.) (finding no abuse of discretion when case had been on file for six months when motion for summary judgment was filed and court did not rule "until almost a year after"). BFM argues that the ruling was nevertheless premature because BFM only discovered the need for more discovery during Chastain's deposition in December of 2016. According to BFM, the invocation of the work-product privilege by Botrie's counsel implied the existence of a plot between Botrie and CMS "to wrongfully evict [BFM] from the leased premises by inducing it through promises and conduct to take certain actions which Botrie would later claim amounted to defaults under the Lease." Botrie responds that BFM's failure to use diligence to obtain information about this plan supports the trial court's ruling. BFM filed several amended pleadings in the following months but did not file a motion to compel Chastain's deposition or ask the trial court to rule on the asserted privilege even after Botrie filed her motion. *See Muller v. Stewart Title Guar. Co.*, 525 S.W.3d 859, 867 (Tex. App.—Houston [14th Dist.] 2017, no pet.) (holding failure to file motion to compel discovery demonstrates lack of diligence); *Akhter*, 2013 WL 4516130, at *4 (stating that failure to utilize available discovery procedures showed lack of diligence). On the record before us, we cannot say that the trial court abused its discretion. We overrule BFM's eleventh issue. We do not reach BFM's twelfth issue because our resolution of BFM's eleventh issue makes it unnecessary to do so. *See* Tex. R. App. P. 47.1.

**Motion for a Continuance**

Five days after the trial court ruled on Botrie's motion for summary judgment and motion to dismiss, BFM filed a verified motion for a continuance of the trial to obtain Chastain's deposition. BFM appeals the denial of that motion in its tenth issue.[5]

We review a trial court's ruling on a motion for a continuance for an abuse of discretion. *Joe v. Two Thirty Nine Joint Venture*, 145 S.W.3d 150, 161 (Tex. 2004). When the movant sought time to conduct additional discovery, we determine whether an abuse of discretion occurred by considering the same nonexclusive factors relevant to whether adequate time for discovery passed before summary judgment. *See Lee v. Lee*, 528 S.W.3d 201, 221 (Tex. App.—Houston [14th Dist.] 2017, pet. denied); *D.R. Horton-Tex., Ltd. v. Savannah Props. Assocs.*, 416 S.W.3d 217, 223 (Tex. App.—Fort Worth 2013, no pet.).

BFM argues that denying the motion deprived it of its only opportunity to obtain evidence from Chastain. As discussed in our analysis of BFM's eleventh issue, nothing in the record indicates that BFM acted to resume Chastain's deposition until BFM filed its motion to compel four months after the end of the deposition. BFM also fails to explain why the substance of Chastain's testimony was unobtainable through other witnesses. Carla Neel, Chastain's supervisor, testified extensively at trial regarding the relationship between Botrie, CMS, and BFM. We conclude that the trial court did not abuse its discretion in denying BFM's motion for a continuance. *See Rocha*

---

[5] BFM simultaneously filed a separate motion to compel Chastain's deposition and requested that the trial court rule that Botrie's communications with Chastain were not privileged. The trial court denied the motion for a continuance by written order but never ruled on the motion to compel. Because the trial court neither ruled on nor refused to rule on the motion to compel, we conclude that BFM failed to preserve error, if any. *See* Tex. R. App. P. 33.1(a).

*v. Faltys*, 69 S.W.3d 315, 319 (Tex. App.—Austin 2002, no pet.) ("A party who fails to diligently use the rules of discovery is not entitled to a continuance." (citing *State v. Wood Oil Distrib., Inc.*, 751 S.W.2d 863, 865 (Tex. 1988))). We overrule BFM's tenth issue.

**Evidentiary Issues**

BFM argues in its eighth issue that the trial court erred by allowing Botrie to put on evidence of the condition of Barton Food Mart on any date except for December 11, 2015. In its ninth issue, BFM argues that the trial court abused its discretion when it excluded evidence of damages on its breach-of-contract counterclaim. We review a trial court's evidentiary ruling for an abuse of discretion. *Southwestern Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016).

### *Admission of Botrie's Evidence*

Shortly after the beginning of trial, BFM filed a motion to exclude any evidence of the condition of Barton Food Mart on any date other than December 11, 2015, which is the date the lawsuit was filed. According to the motion, Botrie "temporally narrowed the scope of this lawsuit to the condition of the property" by her discovery answers.

BFM based this argument on Botrie's answers to Interrogatories 9 and 10. Those interrogatories concerned Botrie's allegations that BFM violated provisions of the Lease requiring it to keep the premises "neat and clean" and to ensure it does not "have an unsightly appearance." In both interrogatories, BFM asked Botrie to "identify each manner (by time, date, and the nature of the incident) by which [BFM] has caused" the premises to violate either provision "since

11

December 1, 2014." Botrie objected to both as seeking irrelevant information because her suit "is based on the state of the Demised Premises as of the date that the lawsuit was filed. The appearance of the Demised Premises at any other time has no bearing." BFM cites to no support for this assertion. We conclude that BFM waived this issue through inadequate briefing. *See* Tex. R. App. P. 38.1(i) (providing that an appellant's brief must contain "appropriate citations to authorities").

### *Exclusion of BFM's Evidence*

BFM next argues that the trial court erred by excluding evidence of BFM's damages from Botrie's alleged breaches of the Lease. Dhuka—BFM's corporate representative—testified at trial that Botrie allegedly breached the Lease by not maintaining the shopping center's common area, among other violations, but was unable to provide any estimate of BFM's damages. The next day, BFM asked for leave to allow Dhuka to testify to BFM's damages, and Botrie objected on several grounds. BFM argues that sustaining the objection was an abuse of discretion because Botrie "opened the door" by its cross-examination. *See generally Service Corp. Int'l v. Guerra*, 348 S.W.3d 221, 234 (Tex. 2011) (observing that "a party may not complain on appeal of the admission of improper evidence if the party 'opened the door' by introducing evidence that is the same or similar in character"). BFM does not address the other grounds Botrie asserted for excluding the evidence of damages. *See Enbridge Pipelines (E. Tex.) L.P. v. Avinger Timber, LLC*, 386 S.W.3d 256, 264 (Tex. 2012) (stating courts must uphold evidentiary rulings "if there is any legitimate basis for the ruling"). Botrie also objected to Dhuka's testimony on the ground that BFM failed to timely amend its disclosures to include damages for its breach-of-contract counterclaim.

12

"A party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce in evidence the material or information that was not timely disclosed" unless the trial court finds either good cause or the absence of unfair surprise or unfair prejudice. Tex. R. Civ. P. 193.6(a). The burden is on the proponent of the evidence to establish an exception. *Id.* R. 193.6(b). BFM did not amend its disclosures to add its damages until eleven days before trial and four months after the end of the discovery period.[6] The exclusion is automatic unless the proponent of the evidence establishes an exception, which BFM makes no effort to do. *See, e.g.*, *In re First Transit Inc.*, 499 S.W.3d 584, 595 (Tex. App.—Houston [14th Dist.] 2016, orig. proceeding [mand. denied]). The trial court did not abuse its discretion by excluding BFM's evidence of contract damages.[7]

We overrule BFM's eighth and ninth issues.

## JUDGMENT

In its remaining issues, BFM challenges various aspects of the final judgment and the trial court's failure to grant its motion for judgment not withstanding the verdict.

---

[6] Botrie elected to conduct discovery under the Level 2 deadlines and the trial court never issued a scheduling order modifying them. *See* Tex. R. Civ. P. 190.3(b)(1)(B) (providing that the discovery period begins when suit is filed and continues until the earlier of nine months after "the due date of the first response to written discovery" or thirty days before trial).

[7] In a single paragraph of its ninth issue, BFM challenges a separate ruling preventing it from putting on evidence that the shopping center would flood during rains. BFM asserted the flooding as one of Botrie's alleged breaches of the Lease. We do not address this argument because without evidence of damages BFM's counterclaim for breach of contract would fail as a matter of law. *See, e.g.*, *Scott v. Sebree*, 986 S.W.2d 364, 372 (Tex. App.—Austin 1999, pet. denied) (observing that damages are essential element of breach-of-contract claim).

13

**Sufficiency of the Evidence**

BFM argues in its sixth, fourteenth, and fifteenth issues that legally insufficient evidence supports the findings that it defaulted under article 23.1(a) and (b) of the Lease.

### *Preservation of Error*

Before addressing the merits of these arguments we must determine if BFM preserved its challenges to the jury's findings. A complaint that legally insufficient evidence supports jury findings must be preserved by (1) a motion for directed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial. *T.O. Stanley Boot Co., v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992).

As previously discussed, the Lease provides that a default occurs when there is a violation of the Lease that remains uncured a certain number of days after the tenant receives notice of the violation. BFM argues in its fourteenth issue that the evidence is insufficient because the record conclusively shows that the August letter did not comply with the Lease's notice requirement.[8] BFM challenges the jury's finding that BFM defaulted by putting up the five exterior signs in its fifteenth issue. BFM raised both of these arguments for the first time in its motion for judgment notwithstanding the verdict but failed to obtain a ruling. However, BFM moved for a directed verdict at the close of evidence on the ground "that notice of default was not properly given." We construe BFM's fourteenth issue as renewing that complaint but conclude that BFM

---

[8] BFM makes the same argument regarding the trial court's findings in its sixth issue. A legal-sufficiency challenge following a bench trial may be made for the first time on appeal. *See* Tex. R. App. P. 33.1(d).

14

failed to preserve the sufficiency challenge in its fifteenth issue. *See id.*; *see also Adams v. Starside Custom Builders, LLC*, 547 S.W.3d 890, 896 (Tex. 2018) ("Rules of error preservation should not be applied so strictly as to unduly restrain appellate courts from reaching the merits of a case.").

### *Merits*

In a legal-sufficiency challenge we review the evidence in the light most favorable to the verdict, "crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors could not." *City of Keller v. Wilson*, 168 S.W.3d 802, 810 (Tex. 2005). A legal-sufficiency challenge will be sustained when, relevant here, the evidence conclusively establishes the opposite of a vital fact. *Southwest Energy Prod.*, 491 S.W.3d at 713.

BFM first argues that the notices of default were ineffective because they did not comply with article 26 of the Lease. Article 26.1 provides:

> Wherever any notice is required or permitted under this Lease, such notice shall be in writing. Any notice or document required or permitted to be delivered under this Lease shall be deemed to be delivered when it is actually received by the designated addressee or, if earlier and regardless of whether actually received or not, when it is either (i) deposited in the United States mail, postage prepaid, certified mail, return receipt requested, or (ii) delivered to the custody of a reputable messenger service or overnight courier service, addressed to the applicable party to whom it is being delivered . . . .

BFM interprets this language to mean that notice must be sent addressed to BFM via certified mail or a courier service. BFM asserts that neither the August 10, 2015 letter (regarding Barley Bean) or the January 13, 2016 letter (regarding late rent) complied because the August letter was addressed to "KLM Enterprises" rather than BFM, and the January letter was delivered by email.

15

We construe the unambiguous language of a lease "according its plain, grammatical meaning unless doing so would clearly defeat the parties' intentions." *Anadarko Petrol. Corp. v. Thompson*, 94 S.W.3d 550, 554 (Tex. 2002). The plain language of the Lease provides three circumstances where a notice will be deemed delivered: (1) "when it is actually received by the designated addressee," (2) when it is sent by certified mail, or (3) when it is delivered to a reliable messenger or courier service. It is undisputed that both letters were received by the designated addressee—BFM—at the designated address. Even if article 26.1 could be read to prohibit deliveries of notices by email, the trial court admitted a copy of the January 13, 2016 letter accompanied by a receipt reflecting that it was sent to BFM by certified mail. The evidence does not conclusively establish that the notices were ineffective.

### *Prior Material Breach*

BFM next contends that the evidence establishes that Botrie breached the Lease before BFM's untimely payment, thus excusing any of its breaches. "It is a fundamental principle of contract law that when one party to a contract commits a material breach of that contract, the other party is discharged or excused from further performance." *Mustang Pipeline Co., v. Driver Pipeline Co.*, 134 S.W.3d 195, 196 (Tex. 2004) (per curiam). By contrast, a non-material breach does not excuse further performance but gives rise to a claim for damages for breach of contract. *Bartush-Schnitzius Foods Co. v. Cimco Refrigeration, Inc.*, 518 S.W.3d 432, 436 (Tex. 2017). The Lease explicitly addresses the effect of a breach by Botrie on BFM's obligation to pay rent: "the obligations of [Botrie] under this Lease are independent of [BFM's] obligations except as may be otherwise expressly provided in this Lease." In the next sentence, BFM "waives all rights which it

16

might otherwise have to withhold" rental payments. The unambiguous language of the Lease provides that Botrie's failure to perform any of her obligations does not excuse BFM's failure to timely pay rent. *See, e.g.*, *In re Davenport*, 522 S.W.3d 452, 457 (Tex. 2017) (orig. proceeding) ("An unambiguous document will be enforced as written."). Applying this provision, we conclude that the defense of prior material breach is unavailable to BFM. *See Ramaker v. Abbe*, No. 03-10-00713-CV, 2013 WL 3791491, at *3 (Tex. App.—Austin July 18, 2013, no pet.) (mem. op.) ("The covenant breached must be part of mutually dependent promises in order to excuse further performance by the nonbreaching party." (citing *Hanks v. GAB Bus. Servs., Inc.*, 644 S.W.2d 707, 708 (Tex. 1982))). The trial court's findings that BFM defaulted under article 23.1(a) of the Lease are therefore supported by legally sufficient evidence.

We overrule BFM's sixth, fourteenth, and fifteenth issues.

**Joinder of Prasla**

BFM argues in its thirteenth issue that the trial court erred in failing to grant its motion to dismiss for want of jurisdiction and its verified motion to abate. The UDJA provides that "[w]hen declaratory relief is sought, all persons who have or claim any interest that would be affected by the declaration must be made parties." Tex. Civ. Prac. & Rem. Code § 37.006(a). If a party is absent, the question "is not whether jurisdiction is lacking . . . but whether the trial court should have refused to enter a judgment." *Brooks v. Northglen Ass'n*, 141 S.W.3d 158, 162 (Tex. 2004). This "prudential question" is governed by Texas Rule of Civil Procedure 39. *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 911 n.3 (Tex. 2017). A complaint that Rule 39 requires joinder must be raised in the trial court or it is waived. *See Brooks*, 141 S.W.3d at 163-64; *Simpson*

17

*v. Afton Oaks Civic Club, Inc.*, 145 S.W.3d 169, 170 (Tex. 2004) (per curiam). BFM first raised this issue in a motion to dismiss for want of jurisdiction and a motion to abate seventy-one days after the trial court signed the final judgment. We conclude that BFM has waived this complaint and overrule its thirteenth issue. *Cf. In re J.W.M.*, 153 S.W.3d 541, 546 (Tex. App.—Amarillo 2004, pet. denied) (holding that appellant waived joinder issue by not raising it until motion for new trial).

**Conformity of the Judgment to the Verdict**

BFM argues in its first issue that the judgment does not conform to the jury's answers because it "gives no legal effect to the jury's findings that [BFM] substantially relied to its detriment" on Botrie's promises. *See* Tex. R. Civ. P. 301 (providing that the court's judgment must "conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity").

The doctrine of promissory estoppel "prevents a promisor who has induced substantial action or forebearance by another from denying that promise if 'injustice can be avoided only by enforcement.'" *Bechtel Corp. v. CITGO Prods. Pipeline Co.*, 271 S.W.3d 898, 926 (Tex. App.—Austin 2008, no pet.) (quoting *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 133 (Tex. 2005) (orig. proceeding)). Promissory estoppel is normally a defensive theory but "may be the basis of an affirmative claim." *Id.*; *see Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 655 (Tex. App.—Dallas 2015, no pet.). BFM characterized its promissory-estoppel theory as a "counterclaim" but employed it defensively at trial. The jury excused three of BFM's breaches. Moreover, BFM did not plead for or seek any damages for its reliance. *See Bechtel Corp.*, 271 S.W.3d at 926 (stating that promissory-estoppel claim may be used affirmatively "to recover no

18

more than reliance damages measured by the detriment sustained" (quoting *Wheeler v. White*, 398 S.W.2d 93, 97 (Tex. 1965)). We overrule BFM's first issue.

**Suit for Accounting**

BFM argues in its seventh issue that the trial court reversibly erred by failing to order an accounting. Botrie replies that BFM made no showing that an accounting was appropriate.

"'A suit for accounting is generally founded in equity,' and whether to grant 'an accounting is within the discretion of the trial court.'" *Williams v. Wells Fargo Bank, N.A.*, 560 Fed. App'x 233, 243 (5th Cir. 2014) (quoting *Southwestern Livestock & Trucking Co. v. Dooley*, 884 S.W.2d 805, 809 (Tex. App.—San Antonio 1994, writ denied)). A party seeking an equitable accounting has the burden to demonstrate that the facts and accounts presented are so complex that it cannot obtain the necessary information through normal discovery procedures. *Grant v. Pivot Tech. Sols., Ltd.*, ___ S.W.3d ___, ___, No. 03-17-00289-CV, 2018 WL 3677634, at *12 (Tex. App.—Austin Aug. 3, 2018, no pet. h.); *T.F.W. Mgmt., Inc. v. Westwood Shores Prop. Owners Ass'n*, 79 S.W.3d 712, 717-18 (Tex. App.—Houston [14th Dist.] 2002, pet. denied). BFM alleged that Botrie deliberately overcharged BFM for electricity and maintenance beginning in 2011 but made no showing that BFM could not obtain the information that it needed through ordinary discovery procedures. We conclude the trial court did not abuse its discretion by not ordering an accounting. *See Williams*, 560 Fed. App'x at 243 ("The Williamses have alleged no facts suggesting the information they seek is complex such that the district court abused its discretion in denying their request for accounting."). We overrule BFM's seventh issue.

19

**Attorney's Fees**

BFM challenges the award of attorney's fees in its second through fifth issues. The relevant portions of the final judgment provide:

> 2. [Botrie] is entitled to recover $131,146.93 in reasonable attorney's fees under Lease section 23.7, as that is the amount of reasonable attorney's fees [Botrie] incurred to enforce and defend her rights and remedies under the Lease.
>
> 3. To the extent necessary, the Court also found that Botrie is entitled to recover the same amount in attorney's fees under Texas Civil Practice and Remedies Code section 37.009.

In its second issue, BFM argues that the trial court's fee award is not supported by the pleadings. *See* Tex. R. Civ. P. 301. Botrie expressly pleaded for a fee award under article 23.7 of the Lease or section 37.009 of the UDJA, and the judgment awards her fees under the Lease and alternatively under the UDJA. BFM points out that Botrie's counsel cited to cases addressing awards under a different fee provision during the hearing but does not explain the significance of that fact. We conclude that the judgment conforms to the pleadings and overrule BFM's second issue.

BFM argues in its third and fourth issues that the fee award must be reversed because Botrie failed to segregate her fees. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 311 (Tex. 2006) (holding that prevailing party must "segregate fees between claims for which they are recoverable and claims for which they are not"). When the issue of attorney's fees is tried to the bench, as it was here, "if no one objects to the fact that the attorney's fees are not segregated as to specific claims, then the objection is waived." *Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 389 (Tex. 1997). BFM made this argument in its motion for new trial but "[r]aising the segregation issue for

20

the first time in a motion for new trial does not preserve error." *Lawson v. Keene*, No. 03-13-00498-CV, 2016 WL 767772, at *5 (Tex. App.—Austin Feb. 23, 2016, pet. denied) (mem. op.) (citing *Horvath v. Hagey*, No. 03-09-00056-CV, 2011 WL 1744969, at *6 (Tex. App.—Austin May 6, 2011, no pet.) (mem. op.)). We overrule BFM's third and fourth issues.

BFM argues in its fifth issue that the trial court abused its discretion by failing to award BFM its attorney's fees and costs. "In any proceeding" under the UDJA, "the court may award costs and reasonable and necessary attorney's fees as are equitable and just." Tex. Civ. Prac. & Rem. Code § 37.009. We review a fee award for an abuse of discretion. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). The trial court's discretion to award fees under the UDJA is "subject to the requirements that any fees awarded be reasonable and necessary, which are matters of fact, and to the additional requirements that fees be equitable and just, which are matters of law." *Id*. The determination of whether an award of fees is equitable and just is not susceptible to direct proof but rather "is a matter of fairness in light of all the circumstances." *Anglo-Dutch Petrol. Int'l, Inc. v. Greenberg Peden, P.C.*, 522 S.W.3d 471, 494 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (citing *Ridge Oil Co., v. Guinn Invs., Inc.*, 148 S.W.3d 143, 162-63 (Tex. 2004)). The award is not dependent on whether a party substantially prevailed, and the trial court has the discretion to decline to award fees entirely. *See Barshop v. Medina Cty. Underground Water Conservation Dist.*, 925 S.W.2d 618, 637 (Tex. 1996); *Anglo-Dutch Petrol.*, 522 S.W.3d at 494.

BFM argues that the trial court's refusal to award fees is not equitable and just since the trial court made declarations that some of BFM's defaults were excused. However, those declarations in BFM's favor did not afford it any relief. The Lease provides that a single "event of

21

default" entitles Botrie to possession of the premises and a variety of other remedies. The trial court did not abuse its discretion by refusing to award fees and costs to BFM when it did not prevail. *See Ochoa v. Craig*, 262 S.W.3d 29, 33 (Tex. App.—Dallas 2008, pet. denied) (finding no abuse of discretion in refusal to award fees to nonprevailing party); *Brazoria Cty. v. Texas Comm'n on Envtl. Quality*, 128 S.W.3d 728, 744 (Tex. App.—Austin 2004, no pet.) (same). We overrule BFM's fifth issue.

## CONCLUSION

Having overruled all of BFM's issues, we affirm the trial court's judgment.

_____
Cindy Olson Bourland, Justice

Before Justices Puryear, Goodwin, and Bourland

Affirmed

Filed:   October 25, 2018